UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT P. CARICO,

       Petitioner,

v.                              Civil Case No. 08-14570
                                   Honorable Patrick J. Duggan

JEFFREY WOODS,

       Respondent.

_____/

### OPINION AND ORDER (1) DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS; (2) DENYING PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT; (3) DENYING AS MOOT PETITIONER'S MOTION FOR IMMEDIATE CONSIDERATION OF HIS MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (4) DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Robert P. Carico ("Petitioner"), a state prisoner currently confined at the Pine River Correctional Facility in St. Louis, Michigan, has filed a *pro se* petition for the writ of habeas corpus. In his pleading, Petitioner challenges his state convictions in 2005 for assault with a dangerous weapon (felonious assault), felon in possession of a firearm, and possession of a firearm during the commission of, or attempt to commit, a felony (felony firearm). Petitioner alleges that the trial court committed errors during his trial and at sentencing and that his trial and appellate attorneys were ineffective. In his answer to the petition, Respondent urges the Court to deny the petition. The Court concludes from a review of the pleadings and the record that Petitioner is not entitled to habeas relief. Accordingly, the Court is denying the petition and Petitioner's motion for partial

summary judgment.

## I.   Background

### A.   The Charges, Trial, and Sentence

Petitioner was charged in Jackson County, Michigan with two counts of felonious assault, one count of felon in possession of a firearm, and three counts of felony firearm. The charges arose from allegations that Petitioner pointed a rifle at Marshawn Williams and Daniel Brzozowski on August 13, 2004, near the intersection South Mechanic and Wilkins Streets in Jackson, Michigan.

At Petitioner's trial, Marshawn Williams ("Marshawn") testified that his aunt and brother lived at 614 South Mechanic Street and that at around noon on August 13, 2004, an "X" was discovered on the home's front steps. Marshawn's friend Joshua Russell ("Josh") explained the meaning of the "X" to him. Marshawn then instructed Josh to ask Petitioner about the "X." Josh walked down the street and returned with Petitioner, who denied being responsible for the "X." Marshawn and Petitioner began to argue and almost started a fist fight. Petitioner pulled a knife from his pants, showed it to Marshawn, and then walked back down the street.

About twenty minutes later, Petitioner returned to 614 South Mechanic Street in his truck and almost ran over Marshawn. After stopping the truck, Petitioner stuck a gun out the window and pointed it at Marshawn, Josh, their friend Daniel Brzozowski ("Daniel"), all of whom were standing on the house. Petitioner said, "Don't run, you cowards." Marshawn, Josh, and Daniel then ran inside the house. Petitioner

2

subsequently parked his truck across the street and pointed the gun at the house.  He then

got back into his truck, circled the neighborhood, and drove away.  In the meantime, a

neighbor called the police and Petitioner subsequently was arrested.

Josh also testified at Petitioner's trial.  According to Josh, he was living at 614

South Mechanic Street on August 13, 2004, when Petitioner came to the front door of the

house, rang the doorbell, and then when Josh came to the door, tried to get inside.  Josh

then saw the "X" on the steps and shoved Petitioner back outside.  Petitioner admitted to

Josh that he put the "X" on the steps and warned Josh to leave the house because the "X"

meant everybody in the house was going to be terminated.  Josh testified that he assumed

Petitioner was angry because one of Josh's friends had not paid Petitioner for a prior

purchase of marijuana.

Later that day, Josh discussed the "X" with Marshawn, who asked Josh to bring

Petitioner to him.  Josh then brought Petitioner to 614 South Mechanic Street.  At trial,

Josh described essentially the same ensuing events that Marshawn provided during his

testimony.  Josh further testified that after the incident, he went to jail on unrelated

charges and was incarcerated with Petitioner, who warned Josh not to testify against him

at trial to avoid having something bad happen to him.

Daniel also testified at Petitioner's trial and described the incident in essentially

the same way as Marshawn and Josh.  The Government also called Rocquelle Rogers,

Pamela Thurson, and Rosemary Williams.  These witnesses also saw someone pull up in

a truck and point a gun toward Marshawn, Josh, and Daniel.  Only Rosemary Williams

3

was able to identify Petitioner as the perpetrator. Rocquelle Rogers was the individual who called the police.

Police Officer Craig Edmondson testified that he responded to the scene and arrested Petitioner. Officer Edmondson observed an assault rifle covered almost entirely by a blanket in Petitioner's truck. The gun was not loaded, and Officer Edmondson did not find any ammunition in the truck or on Petitioner. According to the officer, there was a strong smell of liquor on Petitioner, but Petitioner did not stagger or slur his words and he complied with the officer's instructions.

Police Officer Mark Smith also responded to the scene and assisted with the arrest. Officer Smith testified that he postponed taking a statement from Petitioner because he thought Petitioner was highly intoxicated.

At the close of the prosecution's case, the prosecution and defense stipulated that Petitioner had previously been convicted of a felony and was not eligible to possess a firearm on August 13, 2004.

Petitioner testified that he had befriended Josh and tried to get Josh out of a gang. Petitioner explained that gang members were living at 614 Mechanic Street, and on August 13, 2004, Josh informed him that the gang wanted to talk to him. Petitioner went to the house and was informed by Marshawn and two other men to leave Josh alone. He felt threatened and ran home where he drank some whiskey. Petitioner claimed that he called the police to report that he was attacked by a gang, but an employee informed him that no one was in the general vicinity.

4

Petitioner testified that Marshawn and another man then came to his house and yelled at him to come out of the house.  After Marshawn and the man left, two other men whom he did not know came to his house.  Petitioner testified that he was hiding upstairs, but noticed that one of the men had a shiny revolver.  He called a friend and told the friend that he needed a gun.  Petitioner testified that he thought the gang was going to hurt him.  He was still drinking and did not remember anything after getting in his truck to go to his friend's house.  No other witnesses testified for the defense.

On February 15, 2005, a the jury found Petitioner guilty, as charged, of two counts of felonious assault in violation of Michigan Compiled Laws § 750.82, one count of felon in possession of a firearm in violation of Michigan Compiled Laws § 750.224f, and three counts of felony firearm in violation of Michigan Compiled Laws § 750.227b.  On April 21, 2005, the trial court sentenced Petitioner as a habitual offender, fourth offense, to three concurrent terms of two years in prison for the felony firearm convictions to be followed by concurrent terms of four years and ten months to fifteen years in prison for the assault and felon-in-possession convictions.

### B.    Petitioner's Appeals

On direct appeal, the Michigan Court of Appeals affirmed Petitioner's convictions, but remanded his case to the trial court for an evidentiary hearing to determine whether the trial court had relied on uncounseled prior convictions at sentencing.  *People v. Carico*, No. 263155 (Mich. Ct. App. Dec. 21, 2006) (unpublished).  The Michigan Supreme Court denied leave to appeal the other issues.  *People v. Carico*, 478 Mich. 926,

5

732 N.W.2d 918 (2007).  Petitioner filed a motion for reconsideration, which the Court denied on September 10, 2007.  *People v. Carico*, 480 Mich. 864, 737 N.W.2d 727 (2007).

On March 2, 2007, the trial court held a hearing on the sentencing issue and determined that there were no issues of significance requiring re-sentencing.  The court nevertheless ordered changes in the presentence report to correct some minor inaccuracies and to show that Petitioner had been represented by counsel during a number of his prior convictions.

The Michigan Court of Appeals denied Petitioner's subsequent appeal "for lack of merit in the grounds presented."  *People v. Carico*, No. 277973 (Mich. Ct. App. Oct. 3, 2007).  The Michigan Supreme Court determined, however, that Petitioner had been entitled to an appeal by right from the order denying his motion for re-sentencing.  Accordingly, the Michigan Supreme Court ordered the Court of Appeals to consider Petitioner's appellate application "as on leave granted."  *People v. Carico*, 480 Mich. 1185, 747 N.W.2d 270 (2008).  On remand, the Michigan Court of Appeals affirmed Petitioner's sentence.  *People v. Carico*, No. 277973 (Mich. Ct. App. Feb. 24, 2009).  The Michigan Supreme Court subsequently denied leave to appeal because it was not persuaded that the issues merited review.  *See People v. Carico*, 484 Mich. 869, 769 N.W.2d 700 (2009).  On October 26, 2009, the Michigan Supreme Court denied reconsideration.  *People v. Carico*, 485 Mich. 932, 773 N.W.2d 692 (2009).

Meanwhile, in August 2007, Petitioner filed a motion for relief from judgment in

6

the state trial court.  The court denied his motion on October 10, 2007, and the Michigan

Court of Appeals denied leave to appeal for failure to establish entitlement to relief under

Michigan Court Rule 6.508(D).  *People v. Carico*, No. 284427 (Mich. Ct. App. June 10,

2008).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court,

but the Court rejected his papers as untimely on September 12, 2008.

In early 2010, Petitioner filed a second motion for relief from judgment in which

he challenged a 1991 conviction for operating a vehicle under the influence of liquor

(OUIL), third offense.  He claimed that his OUIL-3 conviction was invalid and that the

trial court in this case improperly relied on the 1991 OUIL-3 conviction at sentencing.

The trial court denied Petitioner's motion, and an appeal from that order is pending in the

Michigan Court of Appeals.  *See People v. Carico*, No. 299319 (Mich. Ct. App. July 28,

2010.)

### C.      Petitioner's Habeas Petition

Petitioner filed his habeas corpus petition on October 28, 2008, and an amended

petition on August 24, 2010.  He claims that:  (1) the trial court stifled his ability to

present an effective defense; (2) the trial court's jury instructions violated his right to due

process; (3) his trial attorney was ineffective; (4) his sentences on the felony firearm

convictions violate the "Rule of Lenity" because they were ordered to run consecutively

to an unrelated offense; (5) his sentences for felony firearm and the underlying felony of

felon-in-possession of a firearm violate his rights under the Fifth Amendment; and (6) he

was denied his right to the effective assistance of appellate counsel.  Petitioner alleges in

7

a supplemental memorandum that the cumulative effect of the errors entitles him to a new trial.  In his amended petition for the writ of habeas corpus, Petitioner raises additional claims about his sentence.  Also pending before the Court are Petitioner's motion for partial summary judgment on his sentencing claims and his motion for immediate consideration of his motion for partial summary judgment.

Respondent has not answered Petitioner's motions, but asserts in his answer to the habeas petition that Petitioner's claims are procedurally defaulted, not cognizable on habeas review, or without merit.  To the extent that any of the claims are unexhausted or procedurally defaulted, the Court will excuse the procedural errors because Petitioner's claims lack merit.  The exhaustion and procedural default doctrines are not jurisdictional limitations on the Court's authority.  *Pudelski v. Wilson*, 576 F.3d 595, 606 (6th Cir. 2009), *cert. denied*, – U.S. –, 130 S. Ct. 3274 (2010).

## II.    Standard of Review

Petitioner is not entitled to the writ of habeas corpus unless he can show that the state court's adjudication of his claim on the merits–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state

court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13, 120 S. Ct. 1495, 1523 (2000). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S. Ct. at 1523. "[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id.* at 410, 120 S. Ct. at 1522 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 409, 120 S. Ct. at 1522.

III.    **Analysis**

A.      **The Right to Present a Defense**

Petitioner alleges that the trial court stifled his right to present an effective defense

by not allowing the jury to read a letter that Josh Russell wrote to him in prison.

Petitioner contends that the trial court also restricted and occasionally suppressed his

cross-examination of the complaining witnesses on the issue of their involvement in, and

affiliation with, gangs.

1.      **Supreme Court Precedent**

The Supreme Court explained in *Holmes v. South Carolina*:

> Whether rooted directly in the Due Process Clause of the Fourteenth
> Amendment or in the Compulsory Process or Confrontation Clauses of the
> Sixth Amendment, the Constitution guarantees criminal defendants a
> meaningful opportunity to present a complete defense. . . . This right is
> abridged by evidence rules that infringe upon a weighty interest of the
> accused and are arbitrary or disproportionate to the purposes they are
> designed to serve.

547 U.S. 319, 324, 126 S. Ct. 1727, 1731 (2006) (internal quotation marks and citations

omitted).  The Sixth Amendment right to present a defense and to confront witnesses

applies to state proceedings and includes the right to conduct reasonable

cross-examination.  *Olden v. Kentucky,* 488 U.S. 227, 231, 109 S.Ct. 480, 482-83 (1988).

However, "[t]he accused does not have an unfettered right to offer [evidence] that

is incompetent, privileged, or otherwise inadmissible under standard rules of evidence."

*Montana v. Egelhoff*, 518 U.S. 37, 42, 116 S.Ct. 2013, 2017 (1996) (quoting *Taylor v.*

*Illinois*, 484 U.S. 400, 410, 108 S. Ct. 646, 653 (1988)).  "[P]robative evidence may, in

10

certain circumstances, be precluded when a criminal defendant fails to comply with a valid discovery rule." *Michigan v. Lucas*, 500 U.S. 145, 151, 111 S. Ct. 1743, 1747 (1991). While alternative sanctions may be "adequate and appropriate in most cases," there may be circumstances where preclusion is justified because a less severe penalty would prejudice the State and harm the adversary process. *Id*. at 152, 111 S. Ct. at 1748 (quoting *Taylor v. Illinois*, 484 U.S. at 413, 108 S. Ct. at 655). As summarized by the Supreme Court in *Holmes v. South Carolina*:

> While the Constitution thus prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. . . . [T]he Constitution permits judges to exclude evidence that is repetitive . . . , only marginally relevant or poses an undue risk of harassment, prejudice, or confusion of the issues.

547 U.S. at 326-27, 126 S. Ct. at 1732 (internal quotation marks and citations omitted).

### 2.      Josh Russell's Letter to Petitioner

Petitioner alleges that the trial court should have permitted the jury to read Josh Russell's letter to him. Petitioner claims that the letter would have impeached the complaining witnesses' testimony and supported the defense theory. Defense counsel, however, did not provide the prosecutor with a copy of the letter in advance. To explain why he did not do so, defense counsel claimed during trial that he recently obtained the letter, wanted to use it for impeachment purposes, and never expected that he would have to use it. (2/14/05 Trail Tr. at 188-89.) Nevertheless, the trial court ruled that defense

11

counsel could not use the letter because he failed to provide the prosecutor with a copy before trial. (*Id*. at 189-91.) The Michigan Court of Appeals subsequently held that there was no good reason for Petitioner not to comply with the prosecutor's discovery request and that, even if the trial court abused its discretion by not permitting Petitioner to use the letter, the error was harmless.

This Court need not determine whether the trial court's decision to preclude defense counsel from using the letter deprived Petitioner of his constitutional right to present a defense, because even if constitutional error occurred, the error was harmless. In a habeas corpus proceeding, a trial error is harmless unless the trial error "'had [a] substantial and injurious effect or influence in determining the jury's verdict.'" *Brecht v. Abrahamson*, 507 U.S. 619, 623, 113 S. Ct. 1710, 1714 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)).

During his testimony at Petitioner's trial, Josh implied that his letter to Petitioner said that Josh lied in his statement to the police. Thus the jury was made aware of the substance of the letter. Furthermore, the evidence against Petitioner was substantial. Three other eyewitnesses (Marshawn, Daniel, and Rosemary Williams) implicated Petitioner in the crimes, and the police found an assault rifle in Petitioner's truck shortly after he left the scene of the crime. Additionally, Josh testified that people connected to Petitioner had forced him to write the letter and that he left town because he felt threatened every time he walked out of the house. (2/14/05 Trial Tr. at 185-87, 190-91.)

The jurors in all likelihood would have convicted Petitioner as charged even if

they had been able to read Josh's letter to Petitioner.  The trial court's ruling therefore could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless.

### 3.    References to Gangs

Petitioner claims that the trial court stifled his ability to present an effective defense and violated his right to confront the witnesses against him by restricting and suppressing his cross-examination of prosecution witnesses regarding their involvement in, and affiliation with, gangs.  The trial court addressed this claim in its order denying Petitioner's motion for relief from judgment on October 10, 2007.  The court concluded from the transcript of the trial that it did not restrict Petitioner's defense in any manner.

The record indicates that the trial court limited the number of gang-related questions asked of Josh and Officer Smith.  (2/14/05 Trial Tr. at 196, 302-03).  For the most part, however, defense counsel was permitted to question the main prosecution witnesses about gang activity.  (*See id.* at 140-41 (cross-examination of Marshawn Williams); *id.* at 176-77, 196-97 (cross-examination of Joshua Russell); *id.* at 212 (cross-examination of Daniel Brzozowski).)  All three of those witnesses denied being involved with gangs.  (*See id.* at 140-41 (Marshawn Williams); *id.* at 176-77 (Joshua Russell); *id.* at 212-13 (Daniel Brzozowski).)  Moreover, Officer Smith testified in response to the trial court's question about gangs that he had no personal knowledge of gang involvement by any of the prosecution witnesses who had testified.  (*Id.* at 303.)

The trial court therefore did not deprive Petitioner of his right to present a defense

13

or his right of confrontation by prohibiting some questions that defense counsel wanted to ask witnesses.

### B.     The Jury Instructions

Petitioner alleges that the trial court violated his constitutional right to due process by refusing to instruct the jury on his defenses to the crime. Petitioner also claims that the trial court erroneously instructed the jury on intoxication. The Michigan Court of Appeals adjudicated these claims on direct review and concluded that the trial court's instruction on intoxication was not erroneous and that the trial court did not err in refusing to give instructions on self defense, duress, or intoxication. The question on habeas review is not whether the jury instructions were "undesirable, erroneous, or even 'universally condemned,'" but whether they violated some right guaranteed the defendant by the Fourteenth Amendment or infected the entire trial to such an extent that the resulting conviction violates due process. *Cupp v. Naughten*, 414 U.S. 141, 146-47, 94 S. Ct. 396, 400 (1973).

### 1.     Self Defense

Petitioner requested, and was denied, a jury instruction on self defense. (2/14/05 Trial Tr. at 375-76.) To prove that he acted in self defense, Petitioner was required to demonstrate that he "honestly and reasonably believe[d] that his life [was] in imminent danger or that there [was] a threat of serious bodily harm." *People v. Heflin,* 434 Mich. 482, 502, 456 N.W.2d 10, 18 (1990).

There was evidence in this case that Petitioner and Marshawn began to argue at

14

about noon or 1:00 p.m. on August 13, 2004, and that Petitioner pulled a knife from his pocket when Marshawn raised his fists as if to fight. No fight ensued. Instead, Petitioner went home. He returned in his truck within an hour and pointed a gun at Marshawn, Josh, and Daniel.

Even if the jury accepted Petitioner's testimony that Marshawn and three other men came to his home and taunted him after the incident with the knife, there was no evidence that Petitioner was in imminent danger of great bodily harm or of losing his life when he subsequently left his house, returned to 614 South Mechanic Street, and pointed a rifle at Marshawn, Josh, and Daniel. Furthermore, Petitioner never admitted to pointing a gun at the alleged victims. Consequently, there was no basis for arguing that he assaulted the victims, but that his conduct should be excused because he was defending himself.

In short, the facts did not support the defense of self defense, and the lack of an instruction on the defense did not violate Petitioner's right to due process.

### 2.   Duress

Petitioner also requested and was denied a jury instruction on duress. (2/14/05 Trial Tr. at 366-67.) To satisfy the elements of duress, a defendant must demonstrate that:

> A) The threatening conduct was sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm;
>
> B) The conduct in fact caused such fear of death or serious bodily harm in the mind of the defendant;

15

C) The fear or duress was operating upon the mind of the defendant at the time of the alleged act; and

D) The defendant committed the act to avoid the threatened harm.

*People v. Lemons*, 454 Mich. 234, 247, 562 N.W.2d 447, 453 (1997) (quoting *People v. Luther*, 394 Mich. 619, 623, 232 N.W.2d 184, 187 (1975)). "'[A] threat of future injury is not enough;'" instead "the threatening conduct or act of compulsion must be 'present, imminent, and impending.'" *Id.* at 247, 562 N.W.2d at 454 (quoting *People v. Merhige*, 212 Mich. 601, 610-11, 180 N.W. 418, 422 (1920)).

As noted above, there was no evidence of threatening conduct sufficient to create in the mind of a reasonable person the fear of death or serious bodily harm. Although Petitioner claims that he was being threatening by gang members, the record indicates that he left his home and sought out the victims. There was additional evidence that no one besides Petitioner was armed with a weapon that day. The facts did not support the defense of duress, and the lack of a jury instruction on the offense did not violate Petitioner's right to due process.

16

### 3.      The Gun

Petitioner requested a jury instruction stating that he could not be guilty of the firearm offenses if the gun was not operational.  (2/14/05 Trial Tr. at 358.)  The trial court denied his request and the Michigan Court of Appeals affirmed, correctly pointing out that under Michigan law a gun does not have to be functional in order for a defendant to be found guilty of felonious assault, felon in possession of a firearm, or felony firearm. *People v. Smith*, 231 Mich. App. 50, 53, 585 N.W.2d 755, 756 (1998) (as to felonious assault); *People v. Peals*, 476 Mich. 636, 656, 720 N.W.2d 196, 206 (2006) (as to felon in possession and felony firearm).  Because there was no basis in state law for the requested jury instruction, the trial court did not deprive Petitioner of due process by declining to give the requested instruction.

Petitioner claims that the Michigan Court of Appeals erred by retroactively applying *Peals* to his case.  The U.S. Supreme Court has stated, however, that, "[w]hen questions of state law are at issue, state courts generally have the authority to determine the retroactivity of their own decisions."  *Am. Trucking Ass'n, Inc. v. Smith*, 496 U.S. 167, 177, 110 S. Ct. 2323, 2330 (1990) (citing *Great N. Ry. Co. v. Sunburst Oil & Ref. Co.*, 287 U.S. 358, 364, 53 S. Ct. 145, 148 (1932)).

Furthermore, even before Petitioner's trial in 2004, the Michigan Court of Appeals had held that the inoperability of a firearm is not relevant to a charge of felon in possession of a firearm or felony firearm.  *People v. Brown*, 249 Mich. App. 382, 386, 642 N.W.2d 382, 385 (2002) (felon in possession); *People v. Thompson*, 189 Mich. App.

17

85, 86, 472 N.W.2d 11, 11-12 (1991) (felony firearm).  Thus, Petitioner is not entitled to

relief on the basis of the trial court's refusal to give a jury instruction on the inoperability

of the gun.

### 4.     Intoxication

Petitioner claims that the trial court's jury instruction on intoxication was

erroneous.  The disputed jury instruction reads as follows:

> The Defendant says that he could not have specifically intended to commit
> any crime charged, because he was intoxicated with alcohol.  This is not a
> defense that the Defendant was under the influence of or impaired by a
> voluntarily and knowingly consumed alcoholic liquor, drug, controlled
> substance or a combination of them.

(2/15/05 Trial Tr. at 412-13.)  This instruction was consistent with Michigan law, which

provides:

> It is not a defense to any crime that the defendant was, at that time, under
> the influence of or impaired by a voluntarily and knowingly consumed
> alcoholic liquor, drug, including a controlled substance, other substance or
> compound, or combination of alcoholic liquor, drug, or other substance or
> compound.

Michigan Compiled Laws § 768.37(1).[1]

Supreme Court decisions place "an 'especially heavy' burden on a defendant who

. . . seeks to show constitutional error from a jury instruction that quotes a state statute."

*Waddlington v. Sarausad*, 555 U.S. 179, –, 129 S. Ct. 823, 831 (2009) (citing *Henderson*

---

[1]  An exception exists if the person did not know and could not have reasonably known that he or she would become intoxicated or impaired.  Mich. Comp. Laws § 768.37(2).

18

*v. Kibbe*, 431 U.S. 145, 155, 97 S. Ct. 1730 (1977)).  As the Court provided in

*Waddlington*:

> Even if there is some ambiguity, inconsistency, or deficiency in the
> instruction, such an error does not necessarily constitute a due process
> violation. . . .  Rather, the defendant must show both that the instruction was
> ambiguous and that there was a reasonable likelihood that the jury applied
> the instruction in a way that relieved the State of its burden of proving every
> element of the crime beyond a reasonable doubt.

*Id*. (internal quotation marks and citations omitted).

The instruction on intoxication in this case was not ambiguous, and Petitioner has

not shown a reasonable likelihood that the jury applied the instruction in such a way that

it relieved the prosecution of proving every element of the crimes beyond a reasonable

doubt.  Therefore, the trial court's instruction to the jury regarding Plaintiff's intoxication

did not violate his right to due process.

### C.    Trial Counsel

Petitioner alleges next that his trial attorney rendered constitutionally ineffective

assistance of counsel.  The Michigan Court of Appeals adjudicated this claim on the

merits and concluded that counsel's alleged deficiency was not apparent from the record

and that Petitioner had not demonstrated prejudice from counsel's inaction.

"The Sixth Amendment guarantees criminal defendants the effective assistance of

counsel.  That right is denied when a defense attorney's performance falls below an

objective standard of reasonableness and thereby prejudices the defense."  *Yarborough v.*

*Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1,4 (2003) (citing *Wiggins v. Smith*, 539 U.S. 510, 521,

123 S. Ct. 2527 (2003), and *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052 (1984)). To establish deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689, 104 S. Ct. at 2065.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694, 104 S. Ct. at 2068. Unless a defendant satisfies both components of the test, [deficient performance and resulting prejudice], "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687, 104 S. Ct. at 2064.

### 1.    Failure to Attempt to Locate a Witness

Petitioner claims that his attorney failed to attempt to locate an eyewitness who observed one of the complaining witnesses on his back porch with a gun just prior to his alleged assault on Marshawn, Josh, and Daniel.

The Sixth Circuit has described trial counsel's duty to conduct pre-trial investigations as follows:

The duty to investigate derives from counsel's basic function, which is "'to

20

> make the adversarial testing process work in the particular case.'"
> *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d
> 305 (1986) (quoting *Strickland*, 466 U.S. at 690, 104 S.Ct. 2052). This duty
> includes the obligation to investigate all witnesses who may have
> information concerning his or her client's guilt or innocence.

*Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005). "The focus in failure-to-investigate

claims . . . is the reasonableness of the investigation (or lack thereof)." *English v.

Romanowski*, 602 F.3d 714, 726 (6th Cir. 2010) (citing *Wiggins*, 539 U.S. at 527, 123 S.

Ct. at 2527).

Petitioner has not presented any evidence demonstrating that the witness he claims

his attorney should have called actually exists. Even if the witness does exist and was on

Petitioner's back porch, there is no reason to believe that the witness would have been

able to testify about Petitioner's subsequent encounter with the victims at 614 South

Mechanic Street, which was several houses away from where Petitioner lived. Thus,

defense counsel appears to have made a reasonable decision not to attempt to locate the

witness.

### 2.     Failure to Cross-Examine and Impeach

### a.     Criminal Records

Petitioner claims that his trial attorney also was ineffective for failing to cross-

examine and impeach the prosecution's witnesses with their criminal records. Aside from

Josh, it is not evident whether any of the other witnesses had a criminal record. As to

Josh, he admitted during his testimony at Petitioner's trial that he went to jail on a couple

of unrelated charges. (2/14/05 Trial Tr. at 175.) Even assuming that the other witnesses

21

had prior criminal records, their convictions might not have been for the type of crimes or within the time frame to render them admissible under Michigan Rule of Evidence 609. Thus, defense counsel was not ineffective for failing to question prosecution witnesses about whether they had been convicted of a crime in the past.

Even if counsel was deficient in failing to question Marshawn Williams, Daniel Brzozowski, and Josh Russell about their past convictions, other prosecution witnesses corroborated their testimony. Thus it does not appear that attempting to impeach Marshawn, Daniel, or Josh Russell with any prior convictions would have affected the jury's assessment of their credibility or the outcome of the trial.

### b.        The Preliminary Examination

Petitioner contends that defense counsel also should have impeached the prosecution witnesses with inconsistent testimony from the preliminary examination. Petitioner has not pointed to any significant inconsistencies and, given the strength of the evidence against him, there is not a reasonable probability that the result of the trial would have been different but for defense counsel's failure to point out minor inconsistencies in the witnesses' testimony. The Court therefore concludes that, even if defense counsel's performance was deficient, the deficient performance did not prejudice the defense.

22

### D.     Appellate Counsel

Petitioner alleges that his appellate attorney provided constitutionally ineffective assistance by failing to consult with him before deciding not to raise his claim under the Confrontation Clause on appeal and by failing to establish a record in the trial court on his claim about trial counsel.  Petitioner was not entitled to compel his appointed attorney to raise all nonfrivolous claims on appeal if counsel, as a matter of professional judgment, elected not to raise the claims.  *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 3312 (1983).  In fact, "the process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail . . . is the hallmark of effective appellate advocacy." *O'Sullivan v. Boerckel*, 526 U.S. 838, 858, 119 S.Ct. 1728, 1739 (1999) (internal quotation marks and citations omitted).

Furthermore, the Court has found no merit in Petitioner's claims about trial counsel or his claim about being deprived of his right to cross-examine prosecution witnesses about gangs.  *See supra* sections III.A.3 and III.C.  Appellate counsel therefore appears to have made an objectively reasonable decision not to raise these claims on appeal.  Nor is there a reasonable probability that, but for appellate counsel's failure to raise those claims, Petitioner would have prevailed on appeal.  The Court therefore concludes that appellate counsel was not constitutionally ineffective.

### E.     The Sentencing

Petitioner has raised a number of sentencing claims.  The state courts found no merit in the claims, and this Court likewise finds no merit in the claims for the reasons

that follow.

### 1.       Double Jeopardy

First, Petitioner contends that his sentences for felony firearm and felon in possession of a firearm violate the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.  The Michigan Court of Appeals adjudicated this claim in the appeal of right and found no merit in it.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution provides:  "No person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb . . . ."  U.S. Const. amend. V.  The Clause protects a criminal defendant against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.  *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 2225 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S. Ct. 2072, 2076 (1969)).

The issue here is whether Petitioner's convictions and sentences for both felon in possession of a firearm and felony firearm violate the protection against multiple punishments for the same offense.  Although the statutes for felon in possession of a firearm and felony firearm require proof of the same elements and punish the same offense, *White v. Howes*, 586 F.3d 1025, 1032 (6th Cir. 2009), that is not determinative of whether convictions under both statutes violate the Double Jeopardy Clause.  As the Sixth Circuit has summarized Supreme Court precedent on this issue:

Whether punishments are "multiple" under the double jeopardy clause is

24

essentially a question of legislative intent. [*Ohio v. Johnson*, 467 U.S. 493, 499, 104 S. Ct. 2536, 2540 (1983)]; *Missouri v. Hunter*, 459 U.S. 359, 366-68, 103 S. Ct. 673, 678-79, 74 L.Ed.2d 535 (1983).

When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes. *See Missouri v. Hunter*, 459 U.S. at 368, 103 S. Ct. at 679; *O'Brien v. Skinner*, 414 U.S. 524, 531, 94 S.Ct. 740, 744, 38 L.Ed.2d 702 (1974).  Under the double jeopardy clause, when evaluating whether a state legislature intended to prescribe cumulative punishments for a single criminal incident, a federal court is bound by a state court's determination of the legislature's intent. *See Ohio v. Johnson*, 467 U.S. at 499, 104 S. Ct. at 2541  ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio legislature did not intend cumulative punishment for the two pairs of crimes involved here."); *Missouri v. Hunter*, 459 U.S. at 368, 103 S.Ct. at 679 ("In addition, the Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes."); *Brown v. Ohio*, 432 U.S. 161, 167, 97 S.Ct. 2221, 2226, 53 L.Ed.2d 187 (1977) (Ohio Court of Appeals had "final authority to interpret that state's legislation."). . . .

Thus, for purposes of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination. . . .

*Banner v. Davis*, 886 F.2d 777, 779-80 (6th Cir. 1989).

In *People v. Calloway*, 469 Mich. 448, 452, 671 N.W.2d 733, 735 (2003), the Michigan Supreme Court determined that the state legislature intended cumulative punishments for felon in possession of a firearm and felony firearm.  The United States Supreme Court "has never held or intimated that the constitutional bar against double jeopardy circumscribes the legislative prerogative to define crimes and prescribe punishment in the context of a single prosecution."  *White v. Howes*, 586 F.3d at 1032. Therefore, Petitioner's double jeopardy challenge to his convictions for felon in

25

possession of a firearm and felony firearm lacks merit.  The two convictions do not

violate the Double Jeopardy Clause.  *See id.*

### 2.    Consecutive Sentences

Petitioner asserts that the trial court violated the "Rule of Lenity" when it ordered

his sentence for the felony firearm convictions to run consecutively to a sentence for an

unrelated offense.  The Michigan Court of Appeals adjudicated this claim on direct

review and found no merit in it because Petitioner was on bond when he committed the

instant offenses and Michigan Compiled Laws § 768.7b(2)(a) allows for consecutive

sentencing in that circumstance.

"The decision whether to impose sentences concurrently or consecutively is a

matter of state criminal procedure and is not within the purview of federal habeas

corpus." *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994); *accord Harrison

v. Parke*, No. 89-6495, 1990 WL 170428, at *2 (6th Cir. 1990) (unpublished decision

explaining that "it is a matter of substantive state law whether [the petitioner's] sentences

should run concurrently or consecutively" and that "the district court did not err in ruling

that [the petitioner's] challenge to his consecutive sentences was not cognizable in a

federal habeas corpus proceeding"); *Freeman v. Jago*, No. 86-3819, 1987 WL 24110, at

*3 (6th Cir. 1987) (unpublished decision finding no merit in the petitioner's complaint

that he received consecutive sentences, because "[t]his was purely a matter of state law").

"Issues of state law cannot form the basis for *habeas* relief." *Landrum v. Mitchell*, 625

F.3d 905, 913 (6th Cir. 2010).

26

Furthermore, imposing consecutive sentences for separate offenses does not violate the Double Jeopardy Clause because Petitioner is not being sentenced twice for the same crime. *United States v. Redditt*, 87 F. App'x 440, 447 (6th Cir. 2003); *see also Crenshaw v. Tate*, No. 90-3791, 1991 WL 93169, at *1 (6th Cir. 1991) (unpublished decision stating that "[t]he imposition of consecutive sentences for separate offenses does not implicate a double jeopardy violation"). Petitioner has no right to habeas relief on the basis of his claim about consecutive sentences.

### 3.   Scoring of the Sentencing Guidelines

Petitioner alleges that the trial court relied on inaccurate information at sentencing and scored his sentencing guidelines incorrectly. Petitioner maintains that the trial court erroneously scored certain prior record and offense variables of the Michigan sentencing guidelines and relied on six convictions, which are invalid because he was not represented by counsel. Additionally, Petitioner contends that the trial court relied on a defective conviction for operating a vehicle under the influence of liquor (OUIL), third offense, and used the same conviction to find him guilty as a fourth habitual offender.

### a.   The Offense and Prior-Record Variables

The "state court's alleged misinterpretation of state sentencing guidelines . . . is a matter of state concern only." *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003). Further:

> [When] conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. C. 475, 116

27

> L.Ed. 2d 385 (1991).  Thus, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."  *Id*. at 67-68.

*Sanborn v. Parker*, – F.3d – , 2010 WL 5151744, at *16 (6th Cir.  Dec. 21, 2010); *see also Mitchell v. Vasbinder*, 644 F. Supp.2d 846, 867 (E.D. Mich. 2009) (stating that the petitioner had "no state-created interest in having the Michigan sentencing guidelines applied rigidly in determining his sentence").

Petitioner was entitled to be sentenced on the basis of accurate information, but a sentence violates due process only if the trial court relied on "misinformation of constitutional magnitude" such as "extensively and materially false" information which the defendant had no opportunity to correct through counsel.  *See Zant v. Stephens*, 462 U.S. 862, 887 n.23, 103 S. Ct. 2733, 2748 n.23 (1983) (quoting *United States v. Tucker*, 404 U.S. 443, 447-49, 92 S. Ct. 589, 591-93 (1972) and *Townsend v. Burke*, 334 U.S. 736, 741, 68 S. Ct. 1252, 1255 (1948)).  Petitioner was afforded an evidentiary hearing at which he had an opportunity to present his claims to the trial court through counsel, and the record indicates that he had a sufficient number of valid convictions to justify the scoring of his prior record variables.  The alleged errors in scoring Petitioner's criminal history do not entitle him to re-sentencing because his criminal history score is unaffected by the allegedly invalid prior convictions.  *United States v. Hunter*, 558 F.3d 495, 507 (6th Cir.), *cert. denied*, __ U.S. __, 130 S. Ct. 312, 175 L.Ed. 2d 207 (2009).  And "the mere presence of hearsay or inaccurate information in a [presentence report] does not constitute a denial of due process."  *Hili v. Sciarrotta*, 140 F.3d 210, 216 (2d Cir. 1998).

### b.      The 1991 OUIL-3 Conviction

Petitioner challenges the trial court's use of his 1991 OUIL-3 conviction to enhance his current sentence.  He claims that the state court adjudicating his OUIL-3 conviction lacked jurisdiction to convict him because he had two prior impaired-driving convictions, not two prior OUIL convictions.

The "[d]etermination of whether a state court [wa]s vested with jurisdiction under state law is a function of the state courts, not the federal judiciary." *Wills v. Egeler*, 532 F.2d 1058, 1059 (6th Cir. 1976).  Furthermore, Petitioner has served his sentence for the OUIL-3 conviction, and he was no longer in custody for that conviction when he filed his habeas petition.  The Supreme Court has never held "that a habeas petitioner may be 'in custody' under a conviction when the sentence imposed for that conviction has *fully expired* at the time his petition is filed." *Maleng v. Cook,* 490 U.S. 488, 491, 109 S.Ct. 1923, 1925 (1989) (emphasis in original).  Habeas relief is unavailable to a state prisoner who challenges his current sentence on the ground that it was enhanced by an allegedly unconstitutional prior conviction that is fully expired.  *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 396-97, 403-04, 121 S. Ct. 1567, 1570, 1574 (2001).  Exceptions to this rule exist where there was a failure to appoint counsel in the case used to enhance the current sentence or where the federal habeas court is "the first and only forum available for review of the prior conviction." *Id.* at 404-06, 121 S. Ct. at 1574-75. Neither exception applies here.

Petitioner was represented by counsel in 1991 when convicted of OUIL-3, and he

is currently challenging that conviction in state court.  He also has not shown that he is actually innocent of the OUIL-3 conviction.

For all the foregoing reasons, the Court concludes that the trial court did not rely on materially false information, which Petitioner had no opportunity to correct through the assistance of counsel.  Petitioner is not entitled to habeas relief on the basis of his sentencing claims.

### F.  Cumulative Effect of Errors

Petitioner contends that the cumulative effect of certain errors entitles him to a new trial.  This claims lacks merit because constitutional errors that would not individually support habeas relief cannot be cumulated to support habeas relief.  *Moore v. Parker*, 425 F.3d 250, 256 (6th Cir. 2005).

### IV.  Conclusion

For the reasons set forth above, this Court holds that the state courts' adjudications of Petitioner's claims did not result in decisions that were contrary to Supreme Court precedent, unreasonable applications of Supreme Court precedent, or unreasonable applications of the facts.  Petitioner therefore is not entitled to habeas relief or partial summary judgment with respect to his sentencing claims.

Accordingly,

**IT IS ORDERED**, that Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**;

**IT IS FURTHER ORDERED**, that Petitioner's motion for partial summary

judgment on his sentencing claims is **DENIED**;

**IT IS FURTHER ORDERED**, that Petitioner's motion for immediate

consideration of his motion for a partial summary judgment is **DENIED AS MOOT**;

**IT IS FURTHER ORDERED**, that a certificate of appealability is **DENIED**

because reasonable jurists would not disagree with the Court's resolution of Petitioner's

claims, nor conclude that the issues presented deserve encouragement to proceed further.

*Miller-El v. Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 1034 (2003).  Petitioner

nevertheless may proceed *in forma pauperis* on appeal without further authorization

because he was permitted to proceed *in forma pauperis* in this Court.  Fed. R. App. P.

24(a)(3).

Dated: February 23, 2011

                                        s/PATRICK J. DUGGAN
                                        UNITED STATES DISTRICT COURT

Copies to:
Robert Carico, #214910
Pine River Correctional Facility
320 N. Hubbard
St. Louis, MI 48880

Jerrold E. Schrotenboer, Esq.